## THE STATE v. GRAVES, *Appellant*.

1. **Criminal Law**: VERDICT: PREJUDICE. The case examined and held that there is not such a lack of evidence as to warrant the belief that the verdict was the result of either passion or prejudice.

2. ————: FAILURE OF DEFENDANT TO TESTIFY AS TO WHOLE CASE: COMMENTS OF PROSECUTING ATTORNEY. It is error to allow the prosecuting attorney, over the objections of the defendant and without rebuke from the court, to comment upon what the defendant might have testified about, but did not, when on the witness-stand.

*Appeal from Hickory Circuit Court.*—HON. W. I. WALLACE, Judge.

REVERSED AND REMANDED.

*Smith, Silver & Brown* and *Amos S. Smith* and *C. S. Essex* for appellant.

(1) The demurrer interposed by the defendant to the evidence offered by the state should have been sustained. There was a total failure of evidence. It completely fails to support the verdict, so that the necessary

The State v. Graves.

inference is, that the jury acted from prejudice or partiality. *State v. Chouteau Hunt*, 91 Mo. 490; *State v. Mansfield*, 41 Mo. 471, 472; *State v. Jaeger*, 66 Mo. 173; *State v. Thomas*, 78 Mo. 327; *State v. Musick*, 71 Mo. 401; *State v. Zorn*, 71 Mo. 415; *State v. Cook*, 58 Mo. 546; *State v. Preston*, 77 Mo. 294; 3 Greenl. Evid. (13 Ed.) sec. 29, and notes *et seq.*, and sec. 30 and notes; *State v. Clark*, 89 Mo. 423; *State v. Burgdorf*, 53 Mo. 65. (2) The statements of the attorney for the state in his closing argument were unfair and greatly prejudicial to defendant's case, and the court should have corrected the statements. *Lloyd v. Railroad*, 53 Mo. 509; *State v. Kring*, 64 Mo. 591; *State v. Lee*, 66 Mo. 165; *State v. Zumbunson*, 86 Mo. 111; R. S., sec. 1919; 1 Bish. Crim. Proc. (3 Ed.) secs. 975, 975a, and 975b; *Marble v. Walters*, 19 Mo. App. 134; *Brown v. Railroad*, 66 Mo. 599.

*B. G. Boone*, Attorney General, for the state.

(1) Remarks of attorneys, during their arguments, should, if error, be objected to and exceptions saved at the time, that the trial court may have an opportunity to rule upon them. It is too late to wait until the motion for a new trial to interpose objections. *State v. Forsythe*, 89 Mo. 667. (2) The weight to be given the evidence and the credibility of witnesses is purely within the province of the jury. *State v. Hert*, 89 Mo. 590. It is only where the verdict is wholly unsupported by the evidence that this court will reverse. *State v. Hunt*, 91 Mo. 490.

NORTON, C. J.—At the May term 1887, of the Hickory county circuit court, defendant was tried upon an indictment charging him with larceny in stealing nine hundred and fifty dollars, from one William Howard. He was convicted and his punishment assessed at

four years imprisonment in the penitentiary, and the cause is before us on his appeal.

It is insisted by counsel that there is no evidence to support the verdict, or at least such a lack of evidence as to justify the belief that the verdict was the result of passion or prejudice. The evidence tended to show that Howard, whose money defendant is charged with stealing, was treasurer of Hickory county and lived at Hermitage, the county seat; that he kept his money in a safe in a small building in the court-house yard; that, on Friday night, the eighth of December, 1883, about one or two o'clock, his safe was blown open and about nine hundred and fifty dollars taken therefrom; that upon an examination being made, a track made by an overshoe was discovered in the vicinity of the said building; that on the road leading to Mill Creek a small bottle was found by the side, or a short distance therefrom, of a track made by an overshoe; that in the field two horses had been hitched; that they had been taken in at a gate and hitched in the field, and had been taken out at the same gate; that the tracks of the horses were followed in the direction of Cross Timbers; that beyond Mill Creek a measure was taken of one of the tracks which corresponded exactly with that taken in the field, and that the tracks went on to Cross Timbers without turning off on either side of the road.

Defendant lived at Cross Timbers, a distance of several miles from Hermitage, and the evidence tended to show that the evening before the Friday night on which the larceny was committed defendant was in possession of the same bottle found near the overshoe track, as before stated. It also tended to show that when Howard, whose money had been stolen, arrived at Cross Timbers the next day (Saturday), that defendant, with whom he was well acquainted, passed in fifteen or twenty feet of him, and seemed to avoid meeting him; that defendant went into a grocery-store on the day of

his arrest and said to one Wright, who kept the store, that he had got his overshoes wet in walking across the square in Cross Timbers, and asked him to go and put them away for him; that Wright took them and put them in the stove, but defendant did not tell him to do so. There is evidence in the record tending to impeach witness Wright, who testified to giving the small bottle, found as aforesaid Friday evening, to the defendant at Cross Timbers, and also gave the most damaging evidence against defendant. As he was before the jury, as well as the witnesses by whom it was sought to impeach him, it was for them to pass upon his credibility. The circumstances in evidence above detailed point strongly enough to defendant as a participant in the larceny charged to prevent us from holding that there is no evidence to sustain the verdict, or such a lack of it as to warrant the belief that it was the result of either passion or prejudice.

The defendant offered himself as a witness and testified as follows: "I never received any bottle of medicine of Hub Wright; had nothing to do with it." This was the whole of his evidence. The prosecuting attorney in his closing argument was permitted by the court without rebuke (although objection was made) to comment on the fact that defendant, when on the stand, could have told where he was on the night of the larceny, but failed to make any statement as to where he was. We are asked to reverse the judgment on this ground, and this brings up the question as to whether or not the prosecuting attorney, in commenting upon the evidence given by a defendant in a criminal case who testifies in his own behalf, is confined to what he swore to on his examination, or whether he may, in addition to making comments on what he swore to, also comment on what he might have sworn to, but did not swear to.

By Revised Statutes, section 1918, it is provided

that a defendant criminally charged may testify in his own behalf and "shall be liable to cross-examination as to any matter referred to in his examination in chief." By section 1919, it is provided that "if the accused shall not avail himself or herself of his or her right to testify * * * it shall not be construed to affect the innocence or guilt of the accused, nor be referred to by any attorney in the cause, nor be considered by the court or jury before whom the trial takes place." Under these statutory provisions it is clear that a defendant who offers himself as a witness cannot be cross-examined except as to such matters as may be referred to by him in his examination in chief, and it would seem to follow necessarily from this, that the comments on his evidence should be confined to such matters as he testified about in his examination in chief and cross-examination. If a cross-examination is limited only to such matters as the witness testified about in chief, upon what principle can the right be maintained to comment in argument upon matters about which a cross-examination under the statute would not have been allowed?

The statute having conferred the right upon such a defendant when he takes the stand to testify only in regard to such matters as he may choose, this right of choice would in effect be taken away by a ruling which would justify comments to be made, and unfavorable inferences to be drawn from what he might have testified about, but about which he did not testify. Under this statute the defendant has two options, the first of which is that he may elect either to go on the stand or not, as a witness; and second, when he elects to go on the stand he may testify only to such matters as he may choose. It is clear that, under the statute, if he elects not to go on the stand, the fact that he did not testify at all could "neither be construed" to affect his innocence or guilt, nor be referred to by any attorney in the case.

If the statute forbids comment upon what he might have sworn to when he elects not to go on the stand, why does it not in its essence and spirit, when he elects to testify, also forbid comment upon what he might have sworn to while on the stand and which he elected, as under the statute he had the right to do, not to testify about. In case of *State v. Anderson*, 89 Mo. 330, it is said *in arguendo*, "that under the statute no comment or allusion can be made as to the failure of a defendant to testify in his own behalf, yet this rule extends no further than the terms of the statute, so that when a defendant in a criminal cause takes the stand, and fails, as in this case, to testify to and explain damaging facts peculiarly within his own knowledge, the inferences from such failure are as adverse as though he was a witness in a civil case." The principle above announced finds support in the cases cited in the opinion from New York, which have been followed in the case of *Brashears v. State*, 58 Md. 568. But the statutes in New York and also in Maryland are unlike ours in this, that in neither of them is it provided that the cross-examination of a defendant who takes the stand as a witness shall be limited to such matters as are referred to by him in his examination in chief, and under the New York statute, in the case of *Stover v. People*, 56 N. Y. 315, where the doctrine is announced, that a defendant takes the stand, that comment might be made on matters not testified about by him, there was a divided court, two of the judges concurring fully, one in the result, and two dissenting.

The act giving defendants criminally charged, the option to testify in their own behalf was first passed in this state in 1877 (Acts 1877, p. 356), and is similar to the New York statute in that it did not limit the right of cross-examination. Under that statute we held, in 1878, in the case of *State v. Clinton*, 67 Mo. 380, that a defendant in a criminal case who went upon the witness-stand, thereby subjected himself to the same rules as to

cross-examination and impeachment as other witnesses. After the rendition of that opinion the legislature, in 1879, amended the said act of 1877, by limiting the cross-examination to matters referred to in the examination in chief. It has been held in a number of cases, that when a trial court allows such a defendant to be cross-examined as to matters not referred to, in his examination in chief, that such action would be reversible error. And if that would be reversible error, why would it not be reversible error to allow comment to be made upon what would be reversible error if brought on cross-examination?

In the present case the defendant only testified to the fact that he never "got any bottle of medicine from Hub Wright and had nothing to do with it." Now, if, on his cross-examination, he had been asked, "where were you on the night this larceny was committed?" and he had been required to answer over his objection, and had answered he was in Hermitage, or if he had been asked, "were you at Cross Timbers on the night of the larceny?" and he had answered that he was not, and the prosecuting attorney had or not commented on this evidence thus brought out, under our rulings in the following cases, the judgment, if rendered against him, would have to be reversed: *State v. Porter*, 75 Mo. 171; *State v. Douglass*, 81 Mo. 231; *State v. McLaughlin*, 76 Mo. 320; *State v. Patterson*, 88 Mo. 88; *State v. Chamberlain*, 89 Mo. 129. In the case last cited it is said: "And it has been uniformly held that no questions can be asked the defendant on cross-examination except of the character designated by the statute. In this instance the questions propounded to the defendant were altogether beyond the confines of the statute. This error must cause a reversal."

If it is reversible error to enquire on cross-examination about a matter not referred to in the examination in chief, why is it not reversible error if the prosecuting

attorney comment upon a matter concerning which, if the defendant had been required to testify, the judgment would be reversed ? Any other ruling or construction of the statute would necessarily have the effect of compelling a defendant in a criminal case either to elect not to go on the stand at all as a witness, or if he elected to go on the stand, to compel him to testify fully in regard to all matters connected with the charge, even though he might thereby criminate himself.

For the error committed in allowing the prosecuting attorney to comment without rebuke (after the attention of the court had been called to it) as to what defendant might have testified about, but did not testify about, the judgment will be reversed and the cause remanded, in which Ray and Black, JJ., concur, and Brace and Sherwood, JJ., dissent.